IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Case No. 4:18CR3070 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **POST-HEARING BRIEF** |
| | ) | |
| -VS- | ) | |
| | ) | |
| **JOSEPH MELTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

COMES NOW, Defendant, Joseph Melton, and submits his Post-Hearing Brief supplementing his original Brief in Support of Motion to Suppress in the above captioned case.

## I. ARGUMENT

The Federal Government's position in this case is essentially "because we call this a compliance inspection, we don't need a warrant, end of story." The Government's over simplified position on this is incorrect. First, merely claiming that this was a "compliance inspection" does not make it so under the law. Under the Supreme Court precedent, in order to be a true "compliance inspection" and avoid 4th Amendment Warrant requirements, it must strictly meet the statutory guidelines of such an inspection. Second, when read in its normal and logical context, the statute in question is clear that if the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATFE) has reasonable cause to believe that a licensee is in violation of the Gun Control Act (GCA), they cannot use a compliance inspection as a pretext to conduct a criminal investigation. Finally, the Government cannot, in good faith, argue that there was not at least reasonable cause that Mr. Melton had violated his recordkeeping duties under the GCA. Because the Government did not obtain an inspection warrant in this case, the evidence is subject to suppression under the 4th Amendment.

1

A.     **Calling it a "Compliance Inspection" does not make it so**

There is not a dispute that the Government is seeking to use its compliance inspection power under 18 U.S.C. § 923 (g)(1)(B)(ii) to justify its warrantless inspection in this case. (Filing No. 38 at ECF p. 6). Both parties acknowledge that in industries that are deemed highly regulated, the Government may, if authorized by statute, conduct warrantless compliance inspections without raising 4th Amendment concerns. This governmental power, however, is not absolute. Under the Biswell Rule, the United States Supreme Court made it clear that these "inspections" would only be upheld so long as the government strictly followed the applicable statutes. *U.S. v. Biswell*, 406 U.S. 311, 315 (1972); *(See Also U.S. v. Hart*, 359 F. Supp. 835, 840 (D. Del. 1973)(Holding that were an FFL was expired and thus there was no statutory authority to inspect under § 923(g), the BATFE search was invalid because there was no waiver of 4th Amendment rights).

Thus, the question becomes whether this was a valid inspection under § 923 (g)(1)(B)(ii). In arguing it was, the Government argues that you should go no further than the plain language of § 923 (g)(1)(B)(ii). (Filing No. 38 at ECF p. 6). In so arguing, the Government is suggesting this Court ignore the basic rules of statutory construction in an attempt to over-simplify this matter. Specifically, the Government ignores that under the cannons of statutory construction related statutes must be read *in pari materia*. *Wachovia Bank, Nat'l Ass'n v. Schmidt*, 546 U.S. 303 (2006). In other words, because all the subsections of §923 (g)(1) relates to the warrant requirements and inspection powers of the BATFE, the statute, with all of its subsections, must be read in their entire context. The Government cannot merely cherry pick subsections and take its language out of context.

For example, the inspection warrant requirement is specifically outlined in § 923(g)(1)(A) and states that when the Government has reasonable cause to believe that a licensee has violated the GCA and evidence of that fact may be found on the license premises, an inspection warrant is required. 18 U.S.C. § 923(g)(1)(A). Thus, when §923(g)(1)(B) states that a compliance inspection may occur "without reasonable cause or a warrant" it means that compliance inspections may only occur absent reasonable cause. This is further supported by §923(g)(1)(B)(i) when it states that a warrantless inspection may be made to investigate a crime "not involving the licensee." There is no reason to make the distinction between criminal investigations involving licensees and non-licensees if an inspection warrant is not required when reasonable cause exists.

The history of § 923(g)(1), both chronologically and legislatively, also supports Mr. Melton in this case. First, Under the 1968 GCA as originally passed, Section 923(g)(1) did not differentiate between criminal investigations and compliance inspections. In other words, a compliance inspection could be used as a warrantless tool to conduct a criminal investigation of a licensee. *See U.S. v. Wilber*, 545 F.2d 764, 765-66 (1st Cir. 1976)(validating a post indictment compliance inspection that was used to support an indictment). The Firearm Owners Protection Act (FOPA) legislatively overruled *Wilber* by amending Section 923(g)(1) to include the procedural protections that exist today. Similarly, FOPA amendments to Section 923(g)(1) added the requirement that a warrantless inspection can take place "in the course of a reasonable inquiry during the course of a criminal investigation **of a person or persons other than the licensee**." 18 U.S.C. 923(g)(1)(B)(i) (emphasis added). Thus, when understood in the context of the chronological history of the § 923(g) Mr. Melton's interpretation is also correct. When read together, the term "without reasonable cause" necessarily means that if "reasonable cause" exists, then the warrant requirement is different.

The Legislative history of FOPA is also crystal clear in supporting Mr. Melton's argument in this case. Regarding the addition of the reasonable cause warrant requirement under § 923(g)(A)(i) the Senate Judiciary Committee report on the legislation states:

> With respect to records and inventory inspections, proposed Section 923(g)(1) would permit enforcing agents to enter the premises of any licensee during business hour for such examinations. This power is subject to two limitations. First, there must be reasonable cause, not necessarily probable cause, to believe a violation of law has occurred and that evidence of the violation may be found on the premises. Second, this reasonable cause must be demonstrated before a Federal magistrate and a warrant must be obtained. The warrant requirement serves to protect against unreasonable exercises of power and to limit the scope of the intrusion.

Senate Judiciary Committee Rep. 583, 98th Cong., 2d Sess., at 15 (1984). Clearly then, in order to be a true "compliance inspection," the BATFE cannot have reasonable cause to believe that a violation of law has occurred.

The Government's argument suggests that Mr. Melton is making a "hail Mary" attempt at an argument of pure originality. The truth of the matter is that Mr. Melton's position is not a controversial position and has been previously articulated. Dr. Stephen Halbrook, the esteemed 2nd Amendment scholar has written extensively on § 923(g) in his definitive treatise. In summarizing the history, meaning and caselaw on this statute, he succinctly summarizes it in the opening of his third chapter:

> To be consistent with the Fourth Amendment, inspections by federal agents of the records and firearms of licensees must be conducted strictly in accord with the statute. A warrant is required to inspect if reasonable cause exists that a violation of the Gun Control Act has occurred, and evidence is on the premises.

Stephen P. Halbrook, <u>Firearms Law Deskbook: Federal and State Criminal Practice</u> §3.1 (Vol. 1, 2017-18 ed.). Dr. Halbrook is not just an academic theorist on the 2nd Amendment. He has successfully argued 2nd Amendment cases in front of the United States Supreme Court and was hired by Congress to write an amicus brief in the landmark *District of Columbia v. Heller* decision.

*See Brief for Amici Curiae 55 Members of the United States Senate, The President of the United States Senate, and 250 Members of the United States House of Representatives in support of Respondent, District of Columbia v. Heller*, 554 U.S. 570 (2008).

Thus, when read in its entire context, with an understanding of the chronological and legislative history of the statute, it is clear that when reasonable cause exists, the BATFE must have at least an inspection warrant and cannot use a purported annual compliance inspection as a pretext for conducting a search in a criminal investigation.

**B.    The evidence establishes that reasonable cause existed prior to the conduct of the inspection in this case**

Although they don't appear to dispute that reasonable cause existed to believe Mr. Melton had violated the Gun Control Act in advance of the search, any attempt to do so would be meritless based upon the evidence obtained at the suppression hearing. First, Industry Operations Inspector (IOI) Kubert admitted that the "compliance inspection" was initiated outside of the normal process as a result of reported violations of the Gun Control Act obtained by BATFE Special Agents. This is also documented in the exhibits received at the hearing which establish a detailed accusation by a known witness (as opposed to an anonymous tip that lacks probable cause). Further, when attempting to contact Mr. Melton to begin the inspection, Mr. Melton panicked and left town. When confronted about his actions (and before the inspection took place) IOI Kubert's investigative report indicated that Mr. Melton admitted that his books were a mess, and that he ran because he feared they were going to arrest him. When asked about why he thought he would be arrested, he indicated that it was because of the fact his books were bad. Only after this did the inspection take place.

In other words, the evidence can only reasonably support one conclusion—that this was a pretext for a criminal investigation as opposed to a good faith compliance inspection. This inspection was initiated at the request of Special Agents because they suspected violations of the Gun Control Act. Those suspicions were only reinforced prior to the initiation of the inspection by the conduct and admissions of Mr. Melton. This information would have easily and quickly caused the issuance of an inspection warrant (especially given the lower standard) and thus protected the 4th Amendment rights of Mr. Melton. The Government's obligations in this regard are straight forward and clearly not onerous. Failure of the Government to comply with these Constitutional standards requires suppression of any evidence obtained as a result of the inspection and all the subsequent fruits.

## II. CONCLUSION

For the aforementioned reasons, Mr. Melton respectfully requests that his Motion to Suppress be granted.

Respectfully submitted,
Joseph L. Melton, Defendant

By:/s/ Christopher Ferdico
Christopher Ferdico, #20988
The Berry Law Firm
2650 N. 48th Street
Lincoln NE 68504
(402) 466-8444
Attorney for Defendant

By:/s/ Justin Kalemkiarian
Justin Kalemkiarian, #25415
The Berry Law Firm
2650 N. 48th Street
Lincoln NE 68504
(402) 466-8444
Attorney for Defendant

## CERTIFICATE OF SERVICE

    I hereby certify I have caused the foregoing to be filed with the Clerk of the United States District Court, District of Nebraska, using the CM/ECF system which sent notification to the Assistant U.S. Attorney, on this the 26th of November 2018.

                                                  /s/ Christopher Ferdico
                                                  Christopher Ferdico, #20988


                                                  /s/ Justin Kalemkiarian
                                                  Justin Kalemkiarian, #25415

4:18-cr-03070-JMG-CRZ Doc # 56 Filed: 11/26/18 Page 7 of 7 - Page ID # 155