IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 4:18CR3070 |
| vs. | GOVERNMENT'S POST-HEARING BRIEF IN RESPONSE TO MELTON'S MOTION TO SUPPRESS |
| JOSEPH L. MELTON, | |
| Defendant. | |

## Introduction

COMES NOW the United States of America, Plaintiff, and provides the following response to Defendant Joseph L. Melton's (hereafter "Melton") post-hearing brief (Filing No. 56) regarding his motion to suppress (Filing No. 34).

## Discussion

Industry Operations Investigators (IOI) Kubert and Vickers, with some assistance from Special Agents Shelton and Sorenson, attempted an unannounced compliance inspection of Melton's business, Leadfoot LLC. Filing No. 35 at ECF pp. 8, 35. As a holder of a federal firearms license, Melton was required to abide by certain regulations, including record keeping requirements. The inspection uncovered numerous violations of federal regulations and statutes, and lead to the discovery of the evidence which forms the basis of this case.

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) took a rather hands-off approach in Melton's case. When issuing Melton his federal firearms license (FFL), ATF conducted a qualification inspection of Leadfoot on December 11, 2013. Filing No. 35 at ECF p. 10. Almost four years passed until another inspection was performed, which is the compliance inspection at issue here. Moreover, this compliance inspection was completed only after ATF had received information that Melton was not in compliance.

The inspection at issue here was conducted pursuant to the statute. Section 923(g) of Title 18 provides that ATF has the authority to conduct a warrantless inspection of a licensee's inventory and records.

> B) The Attorney General may inspect or examine the inventory and records of a licensed importer, licensed manufacturer, or licensed dealer **without such reasonable cause or warrant**--
>
> > (i) in the course of a reasonable inquiry during the course of a criminal investigation of a person or persons other than the licensee;
> >
> > **(ii) for ensuring compliance with the record keeping requirements of this chapter--**
> >
> > > **(I) not more than once during any 12-month period; or**
> > >
> > > (II) at any time with respect to records relating to a firearm involved in a criminal investigation that is traced to the licensee; or
> >
> > (iii) when such inspection or examination may be required for determining the disposition of one or more particular firearms in the course of a bona fide criminal investigation.

18 U.S.C. § 923(g)(1)(B) (emphasis added). The statute authorizes an inspection of licensed manufacturers and dealers once a year without requiring reasonable cause to believe the licensee is not complying with the law, and without requiring a warrant. As the government noted in its initial brief (Filing No. 38 at ECF p. 6), the Supreme Court has upheld inspections conducted pursuant to this statute. *See United States v. Biswell*, 406 U.S. 311, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972); and *New York v. Burger*, 482 U.S. 691, 700–01, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987) (acknowledging the vitality of *Biswell*'s exception to the warrant requirement for inspection of commercial premises in a pervasively regulated industry such as firearms).

*(A) This inspection was an annual compliance inspection.*

Melton challenges whether the inspection can be classified as a "compliance inspection." Filing No. 56 at ECF p. 2. The inspection here meets the statutory definition, and so it was a

compliance inspection. First, the inspection was completed primarily by IOI Kubert, with some assistance from IOI Vickers who was in a training capacity at that time. The testimony showed that SA Shelton and Sorenson were present primarily for the safety of the IOIs. Within a couple of hours, after IOI Kubert was satisfied that Melton was not presenting a threat, Shelton and Sorenson left. As IOI Kubert testified, IOIs are not law enforcement officers. They do not carry firearms or handcuffs, they do not have the authority to make arrests, and they do not have the authority to seize property as evidence. The inspection was carried out primarily by those employees whose duty it is to conduct compliance inspections.

While the fact that his inspection was completed by IOIs helps to refute Melton's claim, it certainly is not necessary that the inspection be carried out by an IOI for the inspection to qualify as a compliance inspection. There is no such requirement found in the statute or the regulations. Moreover, the search and seizure of firearms in *United States v. Aiudi*, 835 F.2d 943 (1st Cir. 1987), was upheld as a valid warrantless ATF inspection even though the ATF employee who completed the inspection was an agent, not an IOI.

In addition to having been completed by industry operations inspectors, the activities IOI Kubert performed show it was a compliance inspection. As Kubert testified, he reviewed all of Melton's records to ensure that the proper information was being recorded. Kubert examined the accuracy of the information, and he sought to match those records to Melton's inventory. The activities completed by Kubert show that he was inspecting Melton's business to ensure compliance with the regulations applicable to licensees. Moreover, the inspection was prompted when ATF received word that Melton was not complying with the regulations, and the goal was to ensure compliance.

Finally, that this was a compliance inspection is shown by the timing. Almost four years had passed since the last inspection, and so this inspection met the requirement of occurring not more than once in a twelve-month period. See 18 U.S.C. § 923(g)(1)(B)(ii)(I). Considering who completed the inspection, the activities completed by the inspector, and the timing, the inspection here meets the definition of an annual compliance inspection.

### *(B) The law does not forbid an annual compliance inspections when ATF has reason to believe the licensee is not in compliance.*

In addition to annual warrantless compliance inspections, § 923(g)(1)(A) authorizes inspections of FFL holders after a showing of reasonable cause to believe a violation has occurred, and that after having obtained a warrant. Melton's primary argument is that when ATF has reason to believe that a licensee is not complying, ATF is required to obtain a warrant, and they are prohibited from relying on the annual complain inspection provision. Melton is wrong. Melton reads into the statute something that the law does not require. There is no statutory support for Melton's argument, and Melton offers no case law showing that such a requirement exists. On the contrary, in *Aiudi*, both ATF and local law enforcement had received information that Aiudi was violating the law. ATF received information "that Aiudi was dealing in stolen firearms, knowingly dealing with convicted felons and failing to properly record his transactions. The ATF also had reason to believe that Aiudi illegally possessed and intended to sell several machine guns and stolen handguns." *Aiudi*, 835 F.2d at 944. The inspection of Aiudi's records, and the seizure of his firearms, were upheld as a valid warrantless compliance inspection under § 923(g). *See also Giragosian v. Bettencourt*, 614 F.3d 25 (1st Cir. 2010) (annual compliance inspection completed at the request of local law enforcement).

> Giragosian asserts that Bettencourt's search did not qualify as a lawful compliance inspection because he acted on a local police department's request. The argument fails. Section 923 does not prohibit an ATF officer from

4

conducting an inspection at the request of local law enforcement, **nor is there any reason to think that Congress intended to prevent ATF officers from carrying out compliance inspections when they have a particular reason to be concerned that violations might exist.**

*Id.* at 30 (emphasis added).

In support of his argument, Melton states that the statute must be read *in pari materia*. That principal may help the Court define existing provisions within a statute. For example, the same words in a statute presumptively have the same meaning. *See Sorenson v. Sec'y of Treasury of U.S.*, 475 U.S. 851, 860, 106 S. Ct. 1600, 89 L. Ed. 2d 855 (1986). But the concept of *in pari materia* does not justify adding requirements to a statute not found on the face of the statute, and does not justify ignoring the plain meaning of the statute. When ATF receives information that a licensee is not complying, they "may" seek a warrant under § 923(g)(1)(A). ATF "may" also conduct a warrantless compliance inspection no more than once a year under § 923(g)(1)(B)(ii)(I). There is nothing in the statute prohibiting ATF from relying on the annual compliance inspection when they receive information that a licensee is not complying, and the concept of *in pari materia* does not justify adding to the statute what is not there.

Melton also cites to § 923(g)(1)(B)(i) in support of his argument. That subsection provides an additional grant of authority for ATF to examine a licensee's records "during the course of a criminal investigation of a person or persons other than the licensee … ." Melton argues, "[t]here is no reason to make the distinction between criminal investigations involving licenees and non-licensees if an inspection warrant is not required when reasonable cause exists." Filing No. 56 at ECF p. 3. Here too Melton is wrong. When ATF investigates straw purchasers, for example, they will seek information about the firearms a suspect purchased from a licensee. As part of their investigation, they will seek the records pertaining to firearms purchases made by that customer. When they visit the store who sold the firearms in such circumstances, their

5

purpose will not be to examine all of the licensee's records and inventory. Their focus will be only on those records pertaining to the suspect-customer. But the licensee does not get to escape an annual compliance inspection of the licensee's practices simply because ATF once sought a few records pertaining to a particular customer.

Melton contends that the legislative history supports his argument. Filing No. 56 at ECF p. 4. It does not. The Tenth Circuit, in *United States v. Marchant*, 55 F.3d 509 (10th Cir. 1995), considered an issue different from the one raised in this case. Nonetheless, in headnotes 8 and 9, the *Marchant* Court provided a helpful history of the Gun Control Act (GCA) and the Firearm Owners Protection Act (FOPA). In so doing, the *Marchant* Court described the legislative goals.

> Congress enacted the GCA because "it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." *Huddleston v. United States*, 415 U.S. 814, 824, 94 S.Ct. 1262, 1268, 39 L.Ed.2d 782 (1974). "The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.' " *Id.* (quoting S.Rep. No. 1501, 90th Cong., 2d Sess. 22 (1968)).

*Marchant*, 55 F.3d at 513.

While still pursuing those goals, with the FOPA Congress sought to more narrowly tailor ATF's inspection powers. "FOPA replaced the GCA's broad authorization to the BATF to make warrantless inspections of ATF Form 4473s 'at all reasonable times,' with a more defined range of inspection powers." *Id.* at 514. The *Marchant* Court described the annual compliance inspection as an "exception" to the warrant rule. *Id. See also United States v. Louis*, 559 F.3d 1220, 1228 (11th Cir. 2009) (noting that firearm's dealers must submit to periodic, indeed surprise, warrantless inspections and investigations by the ATF).

The principal purpose of the legislations remains keeping firearms out of the hands of prohibited persons. And the specific goal of the section at issue in this case is stated within the

6

statute, "ensuring compliance with the record keeping requirements … ." § 923(g)(1)(B)(ii). Those goals are not advanced by prohibiting ATF from relying on the annual compliance inspection provision when ATF has reason to believe that a licensee is not complying. There is no "reason to think that Congress intended to prevent ATF officers from carrying out compliance inspections when they have a particular reason to be concerned that violations might exist." *Giragosian*, 614 F.3d at 30.

## Conclusion

Melton's primary argument is that when ATF has reason to suspect that a licensee is not complying, ATF is prohibited from completing an annual compliance inspection, and can only inspect the licensee after having obtained a warrant. However, no such prohibition is found in the statute, nor is there any case law supporting that interpretation. ATF conducted a lawful annual compliance inspection of Melton's business, and the evidence uncovered during that inspection is admissible against Melton.

UNITED STATES OF AMERICA, Plaintiff

Respectfully submitted,

JOSEPH P. KELLY
United States Attorney
District of Nebraska

By:   *s/ Matthew R. Molsen*
MATTHEW R. MOLSEN, #22693
Assistant U.S. Attorney
487 Federal Building
100 Centennial Mall North
Lincoln, NE  68508
Tel:  (402) 437-5241
Fax:  (402) 437-5390
E-mail:  matthew.molsen@usdoj.gov

**Certificate of Service**

      I hereby certify that on December 4, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants.

                                                                                            _s/ Matthew R. Molsen_
                                                                                            Assistant U.S. Attorney