IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH L. MELTON,<br><br>Defendant. | **4:18CR3070**<br><br>**FINDING, RECOMMENDATION,<br>AND ORDER** |

Defendant Joseph L. Melton has moved to suppress all evidence and statements obtained during the inspection of his firearms business, Leadfoot, LLC, on August 24, 2017. (Filing No. 34). Defendant argues that prior to the inspection, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents had reasonable cause to believe Melton was violating the record-keeping requirements of the Gun Control Act of 1968 (GCA). Defendant claims that since the ATF could have obtained a warrant to search his business, the agency's inspection without a warrant violated the Fourth Amendment. (Id.).

BACKGROUND

Leadfoot LLC is a Nebraska company located in Holdrege, Nebraska. It applied for and was granted a Manufacturer's Federal Firearms License (FFL) in 2014, and it manufactures silencers, which are classified as firearms under the GCA. (Filing No. 35, at CM/ECF p. 35). Melton runs Leadfoot's day-to-day business operations and is responsible for its recordkeeping requirements. (Id.)

In May 2017, ATF agents spoke by phone with a party who identified himself as a former Leadfoot employee and longtime friend of Melton's. "Michael" reported

concerns regarding Melton and his operation of Leadfoot, including noncompliance with the National Firearm's Act (NFA), and using straw purchases when selling firearms. (Filing No. 35, at CM/ECF p. 31).

At approximately 8:30 a.m. on August 24, 2017, ATF Industry Operations Investigators (IOI) Kubert and Vickers, and Special Agents Shelton and Sorenson initiated an unannounced regulatory compliance inspection of the Leadfoot business premises. (Id.) (See. 18 U.S.C. § (g)(1)(B)(ii)). Upon discovering that the front door of the Leadfoot premises was locked, IOI Kubert contacted Melton by telephone. Melton answered the phone and stated he was in Aurora, Colorado, so he could not immediately meet with the agents at the Leadfoot premises. IOI Kubert asked Melton to text a picture of a mountain or another landmark to confirm his whereabouts. Upon receiving that confirmation, the IOI was willing to re-schedule the inspection. (Id.) No such text message was received by the agents. (Id.)

Later that afternoon, Melton called IOI Kubert and admitted he had been in Lexington, Nebraska all day. (Id.) Defendant explained that he panicked after receiving the call from IOI Kubert because he knew his records were not in good shape. (Id.) Melton acknowledged that his operations were subject to ATF inspection, but thought he would receive advance notice of any inspection. (Id.)

Melton then met with the inspectors at the Leadfoot premises and at approximately 3:15 p.m., the inspection began. The inspection ultimately revealed 18 violations of federal code and statutes:

1.  Willfully obstructing ATF's right of entry to conduct a compliance inspection;
2.  Falsification of required records;
3.  Conduct of business away from the licensed premises;

2

4.  False statements and representation made by the licensee with respect to any information or records required by the Gun Control Act;

5.  Failure to document the transfer of a firearm to a nonlicensee on ATF F 4473;

6.  Failure to conduct a NICS check prior to the transfer of a firearm;

7.  Failure to maintain an accurate Record of Firearms Manufactured or Otherwise Acquired;

8.  Failure to maintain an accurate Manufacturer's Firearms Disposition Record;

9.  Failure to apply required markings on firearms manufactured;

10. Failure to register silencers manufactured;

11. Failure to retain NFA registration documents on file for NFA weapons in inventory;

12. Unlawful possession of an NFA Weapon that is not identified by a serial number;

13. Receipt of a weapon transferred in violation of the provisions of the NFA; Possession of an NFA weapon not registered to the possessor in the National Firearms Registration and Transfer Record (NFRTR);

14. Failure to submit the Annual Firearms Manufacturing and Exportation Report (AFMER), ATF F 5300.11;

15. Failure to post and have available the license at the business premises;

16. Failure to complete ATF F 4473 in accordance to the directions on the form;

17. Error on Section A of ATF F 4473; and

18. Failure to properly record the document used to verify the identity of transferee.

(Filing No. 35, at CM/ECF pp.17-28).

On June 20, 2018, an indictment was filed charging Melton with one count of receipt or possession of an unregistered firearm under 26 U.S.C. §§ 5841,

3

5861(d), and 5871, and one count of receipt or possession of a firearm unidentified by serial number under 26 U.S.C. § 5861(i) and 5871. (Filing No. 1).

Melton now seeks to suppress all evidence obtained or arising from the August 24, 2017 inspection. (Filing No. 34). Defendant claims that because agents had reasonable cause to believe Melton was in violation of GCA's recordkeeping requirements prior to the inspection, they were not authorized to perform a warrantless regulatory inspection and were required to obtain a warrant under the GCA and the Fourth Amendment. (Id.)

ANALYSIS

The facts material to the motion to suppress are undisputed. The question presented is an issue of law: Specifically, is the government legally authorized to conduct a warrantless annual compliance inspection of a firearms business if it has "reasonable cause" to believe the licensee is violating the GCA and could have obtained a warrant?

As originally enacted, the GCA placed no limits on warrantless inspections of businesses holding a Federal Firearms License (FFL) so long as the inspection was conducted during business hours. See, The Gun Control Act of 1968, Pub. L. No. 90-351, § 902, 82 Stat. 231 (1968) (amended 1986); See also, United States v. Biswell, 406 U.S. 311, 311-12 (1972). The Firearm Owners Protection Act of 1986 (FOPA) amended the GCA to curtail this authority.

Pursuant to 18 U.S.C. 923(g)(1)(A), every licensed manufacturer of guns must maintain records "of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form,

as the Attorney General may by regulations prescribe." 18 U.S.C. 923(g)(1)(A).  An importer, manufacturer, or dealer holding an FFL license is not required to submit reports and information regarding its mandatory record-keeping except as follows:

1)    If the government "has reasonable cause to believe a violation of [the GCA] has occurred and that evidence thereof may be found" on the FFL licensee's premises, it "may, upon demonstrating such cause before a Federal magistrate judge and securing from such magistrate judge a warrant authorizing entry, enter during business hours the premises" to examine the business' records and any firearms or ammunition kept or stored at the premises; (18 U.S.C. § 923(g)(1)(A));

2)    "[W]ithout such reasonable cause or warrant" the government may inspect the FFL licensee's records and premises:

   (i)    in the course of a reasonable inquiry during the course of a criminal investigation of a person or persons other than the licensee.

   (ii)   for ensuring compliance with the record keeping requirements of this chapter—

      (I)    not more than once during any 12-month period; or
      (II)   at any time with respect to records relating to a firearm involved in a criminal investigation that is traced to the licensee; or

   (iii)  when such inspection or examination may be required for determining the disposition of one or more particular firearms in the course of a bona fide criminal investigation.

18 U.S.C. § 923(g)(1)(B).

5

The parties agree that prior to inspecting Leadfoot, the ATF agents had reasonable cause to believe evidence of GCA violations would be found during a search of Leadfoot's records. They disagree on the import of that undisputed fact.

Defendant argues that under the Fourth Amendment and § 923(g)(1)(A), the government was required to obtain a warrant before initiating a search. Melton contends that when there is 'reasonable cause' to believe that a licensee has violated the GCA and evidence of the violation may be found at the business premises, the ATF must obtain a warrant from a federal magistrate judge before searching the premises. (Filing No. 35, at CM/ECF p. 5). Defendant argues an inspection "without such reasonable cause or warrant" can be legally performed only when ATF agents lack "reasonable suspicion that the licensee has violated [the] GCA." ((Filing No. 35, at CM/ECF p. 4). According to Defendant, if the government has reasonable cause to support a warrant, it cannot inspect the premises of an FFL licensee without a warrant. (Filing No. 56, at CM/ECF p. 3).

The government argues Melton misreads the "reasonable cause" authority granted under [§ 923(g)(1)(A)] as a limitation." (Filing No. 38, at CM/ECF p. 7). Contrary to Defendant's argument, the government asserts § 923(g)(1)(A) provides just "[o]ne of the authorized methods to conduct an inspection"—that is "to seek a warrant when there is reasonable cause to believe a violation has occurred," with § 923(g)(1)(B) providing an additional legal means of conducting an inspection "without such reasonable cause or warrant." (Id.) The government contends that "[t]here is simply nothing in the statute forbidding inspectors from completing the annual compliance inspection under § 923(g)(1)(B)(ii)(I) simply because they have reason to believe the licensee is not complying with the law." (Id.)

6

When interpreting a statue, courts "look first to its language, giving the words used their ordinary meaning." Artis v. District of Columbia, 138 S. Ct. 594, 603 (2018) (quoting Moskal v. United States, 498 U.S. 103, 108 (1990). "[I]f the relevant text is not reasonably susceptible to more than one interpretation, [the court] will not look beyond it unless application of the plain language 'will produce a result demonstrably at odds with the intentions of its drafters.'" DeCoteau v. Schweitzer, 774 F.3d 1190, 1192 (8th Cir. 2014) (quoting Contemporary Indus. Corp. v. Frost, 564 F.3d 981 (8th Cir. 2009). A statute must be construed to avoid interpretations that would violate the Constitution or produce absurd results. Harris v. Velichkov, 860 F. Supp. 2d 970, 979–80 (D. Neb. 2012).

The agents who inspected Leadfoot on August 24, 2017 did not have a search warrant. Rather, they cite § 923(g)(1)(B)(ii)(I) as authority for inspecting Leadfoot without a warrant. Pursuant to § 923(g)(1)(B)(ii)(I), a GCA regulatory inspection without a warrant may be performed "not more than once during any 12-month period."

Warrantless inspections conducted pursuant to § 923(g)(1)(B) do not violate the Fourth Amendment. United States v. Biswell, 406 U.S. 311 (1972) (holding the surprise and warrantless search of a gun dealer's premises during business hours as part of the GCA's inspection procedures does not violate the Fourth Amendment). As explained in Biswell, close scrutiny of firearms traffic is "undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders," and "inspection is a crucial part of the regulatory scheme, since it assures that weapons are distributed through regular channels and in a traceable manner." Biswell, 406 U.S. at 315–16. "[I]nspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable expectations of privacy. When a dealer

chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection." Biswell, 406 U.S. at 316. And "if inspection [under the GCA] is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible." Biswell, 406 U.S. at 316.

As applied to the Leadfoot inspection, Defendant's firearms business had not been inspected within the 12 months prior to August 24, 2017. Therefore, under Biswell, a warrantless inspection conducted under § 923(g)(1)(B)(ii)(I) did not violate Defendant's Fourth Amendment rights.

Defendant argues, however, that the inspection was not performed pursuant to the inspection authority afforded under § 923(g)(1)(B)(i-iii). He argues the government had reasonable cause to request a warrant, and § 923(g)(1)(B) is applicable only when the government lacks "such reasonable cause or warrant" to conduct a search.

Based on Defendant's argument, if ATF had evidence to show Leadfoot was violating the GCA, it could not perform a regulatory inspection of that business without a warrant. This result is wholly contrary to the underlying purposes of the GCA—to regulate and trace the movement of firearms. And this interpretation of § 923(g)(1)(A) and (B) is not required or even supported by the language of the statute itself.

Based on the statutory language, 18 U.S.C. 923(g)(1)(A) and (B) do not operate exclusive of each other but rather in tandem, with § 923(g)(1)(B) supplementing the records and firearms inspection authority granted under § 923(g)(1)(A) while also limiting the time, place, and scope of warrantless regulatory inspections. Biswell, 406 U.S. at 315. As applied to § 923(g)(1)(B)(ii)(I), if a FFL licensee's premises has been inspected within the last twelve months, an additional inspection is not authorized absent a warrant based on reasonable cause (see, § 923(g)(1)(A)), or a showing that one of the other grounds for inspection under § 923(g)(1)(B) exists. But where, as here, § 923(g)(1)(B)(ii)(I) authorized an unannounced regulatory inspection of Leadfoot, the agents' alleged motive for conducting the inspection—to find evidence of criminal activity—is not relevant. Ulterior motives do not invalidate lawful police conduct, (Whren v. United States, 517 U.S. 806, 806 (1996)), and the "discovery of evidence of crimes in the course of an otherwise proper administrative inspection does not render that search illegal or the administrative scheme suspect," even if the inspection procedures ultimately serve both regulatory and penal goals. New York v. Burger, 482 U.S. 691, 716 (1987) (holding warrantless regulatory inspections did not violate the Fourth Amendment even if a motive behind the regulatory scheme was to allow the police to perform warrantless searches for evidence of criminal activity).

The court therefore finds the warrantless inspection of Leadfoot conducted on August 24, 2017 did not violate the Fourth Amendment or the GCA. Defendant's motion to suppress should be denied.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by Defendant Melton (Filing No. 34) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, January 28, 2019 or as soon thereafter as the case may be called, for a duration of three (3) trial days.  Jury selection will be held at the commencement of trial.

Dated this 28th day of December, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge