IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:18CR3070 |
| Plaintiff, | |
| vs. | GOVERNMENT'S BRIEF IN RESPONSE TO MELTON'S OBJECTIONS TO JUDGE ZWART'S FINDINGS AND RECOMMENDATION |
| JOSEPH L. MELTON, | |
| Defendant. | |

## Introduction

Judge Zwart issued her findings and recommendations (Filing No. 62) that Melton's motion to suppress (Filing No. 34) be denied. Melton objected (Filing No. 66). The United States of America, Plaintiff, now submits this response to Melton's objections and to his supporting brief (Filing No. 67). Additionally, the government relies on earlier briefs filed in response to the motion to suppress (see Filing No. 38 and Filing No. 60).

## Discussion

Industry Operations Investigators (IOI) Kubert and Vickers, with some assistance from Special Agents Shelton and Sorenson, completed an unannounced compliance inspection of Melton's business, Leadfoot LLC. Filing No. 35 at ECF pp. 8, 35. As a holder of a federal firearms license, Melton was required to abide by certain regulations, including record keeping requirements. The inspection uncovered numerous violations of federal regulations and statutes, and lead to the discovery of the evidence which forms the basis of this case.

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) took a rather hands-off approach in Melton's case. When issuing Melton his federal firearms license (FFL), ATF conducted a qualification inspection of Leadfoot on December 11, 2013. Filing No. 35 at ECF p. 10. Almost four years passed until another inspection was performed, which is the compliance

inspection at issue here. Moreover, this compliance inspection was completed only after ATF had received information that Melton was not complying.

The inspection at issue here was conducted pursuant to the statute. Section 923(g) of Title 18 provides that ATF has the authority to conduct a warrantless inspection of a licensee's inventory and records.

> B) The Attorney General may inspect or examine the inventory and records of a licensed importer, licensed manufacturer, or licensed dealer **without such reasonable cause or warrant**--
>
>> (i) in the course of a reasonable inquiry during the course of a criminal investigation of a person or persons other than the licensee;
>>
>> **(ii) for ensuring compliance with the record keeping requirements of this chapter--**
>>
>>> **(I) not more than once during any 12-month period; or**
>>>
>>> (II) at any time with respect to records relating to a firearm involved in a criminal investigation that is traced to the licensee; or
>>
>> (iii) when such inspection or examination may be required for determining the disposition of one or more particular firearms in the course of a bona fide criminal investigation.

18 U.S.C. § 923(g)(1)(B) (emphasis added). The statute authorizes an inspection of licensed manufacturers and dealers once a year without requiring reasonable cause to believe the licensee is not complying with the law, and without requiring a warrant. The Supreme Court has upheld inspections conducted pursuant to this statute. *See United States v. Biswell*, 406 U.S. 311, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972); and *New York v. Burger*, 482 U.S. 691, 700–01, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987) (acknowledging the vitality of *Biswell*'s exception to the warrant requirement for inspection of commercial premises in a pervasively regulated industry such as firearms).

### A. There is no statutory support for Melton's argument.

In addition to annual warrantless compliance inspections, § 923(g)(1)(A) authorizes inspections of FFL holders after a showing of reasonable cause to believe a violation has occurred, and that after having obtained a warrant. Melton's primary argument is that when ATF has reason to believe that a licensee is not complying with the law, ATF is required to obtain a warrant under § 923(g)(1)(A). Melton asserts that under such circumstances, the law forbids ATF from relying on the annual compliance inspection authorized under § 923(g)(1)(B)(ii)(I). Melton, however, is wrong. There is no statutory support for Melton's argument that ATF is prohibited from relying on the annual compliance inspection. The statute provides for multiple grants of authority to ATF to conduct inspections of licensees. As the statute provides, ATF "**may**" conduct an inspection after obtaining a warrant as outlined in § 923(g)(1)(A). And if they have not conducted a compliance inspection within the previous year, ATF **"may"** also conduct a compliance inspection without first obtaining a warrant under § 923(g)(1)(B)(ii)(I). There is no requirement found in the statute stating that ATF cannot rely on the annual compliance inspection when they have reason to believe the licensee is not complying. Moreover, each grant of authority is preceded by a "may" clause, as opposed to a "shall" clause.

In support of his argument, Melton states that the statute must be read *in pari materia*. Filing No. 67 at ECF p. 2. That principal may help the Court define existing provisions within a statute. For example, the same words in a statute presumptively have the same meaning. *See Sorenson v. Sec'y of Treasury of U.S.*, 475 U.S. 851, 860, 106 S. Ct. 1600, 89 L. Ed. 2d 855 (1986). But the concept of *in pari materia* does not justify adding requirements to a statute not found on the face of the statute, and does not justify ignoring the plain meaning of the statute. When ATF receives information that a licensee is not complying, they "may" seek a warrant

under § 923(g)(1)(A). ATF "may" also conduct a warrantless compliance inspection no more than once a year under § 923(g)(1)(B)(ii)(I). There is nothing in the statute prohibiting ATF from relying on the annual compliance inspection when they receive information that a licensee is not complying, and the concept of *in pari materia* does not justify adding to the statute what is not there.

Melton cites the rule of lenity in support of his argument, but offers no case law suggesting that the rule might apply under these circumstances. Filing No. 67 at ECF p. 3. When a criminal statute is ambiguous about what conduct is outlawed, or is ambiguous about the severity of the penalty, the rule of lenity would apply because the defendant has not received adequate notice. *United States v. R.L.C.*, 503 U.S. 291, 305, 112 S. Ct. 1329, 1338, 117 L. Ed. 2d 559 (1992) (The rule has been applied to resolve issues about the substantive scope of what conduct is prohibited, and to answer questions about the severity of sentencing.) (citing *Bifulco v. United States*, 447 U.S. 381, 387, 100 S. Ct. 2247, 2252, 65 L. Ed. 2d 205 (1980)). The issue here is not whether Melton's conduct was illegal, nor is there an issue with the range of penalties Melton faces, and so the rule of lenity does not apply. Moreover, Melton cannot reasonably argue that he was without notice that ATF might conduct inspections, even surprise inspections, under § 923(g)(1)(B)(ii)(I). Even if the rule of lenity were very generally understood to mean that defendants should have adequate notice, that concern does not apply to this case. Melton knew he was subject to inspections by ATF. Additionally, the rule of lenity does not apply when there is no ambiguity in the statute. As explained above, the statute provides for two clear grants of authority, and there is no statutory support for Melton's argument. Furthermore, the rule of lenity has not been used to impose restrictions against the government not found in the plain text of the statute, as Melton seeks to do. The rule of lenity does not help Melton.

4

Melton also cites to § 923(g)(1)(B)(i) in support of his argument. Filing No. 67 at ECF p. 3. That subsection provides an additional grant of authority for ATF to examine a licensee's records "during the course of a criminal investigation of a person or persons other than the licensee … ." Melton argues, "[t]here is no reason to make the distinction between criminal investigations involving licenees and non-licensees if an inspection warrant is not required when reasonable cause exists." *Id.* Here too Melton is wrong. When a suspect uses a firearm to commit a crime, ATF will seek information from a licensee about the firearm a suspect purchased. The records sought are limited only to the firearm connected to the crime. When records are sought under that subsection, the purpose is not be to examine all of the licensee's records and inventory. Rather than providing support for Melton's argument, that subsection merely makes clear that a licensee does not get to escape an annual compliance inspection simply because ATF once sought records pertaining to a particular suspect.

### B. *There is no support for Melton's argument found in case law.*

Melton cites no cases that support his main contention that ATF is prohibited from relying on the annual compliance inspection when they have reason to believe a licensee is not complying. To the contrary, in *United States v. Aiudi*, 835 F.2d 943 (1st Cir. 1987), both ATF and local law enforcement had received information that Aiudi was violating the law. ATF received information "that Aiudi was dealing in stolen firearms, knowingly dealing with convicted felons and failing to properly record his transactions. The ATF also had reason to believe that Aiudi illegally possessed and intended to sell several machine guns and stolen handguns." *Id.* at 944. The inspection of Aiudi's records, and the seizure of his firearms, were upheld as a valid warrantless compliance inspection under § 923(g). *See also Giragosian v.*

*Bettencourt*, 614 F.3d 25 (1st Cir. 2010) (annual compliance inspection completed at the request of local law enforcement).

> Giragosian asserts that Bettencourt's search did not qualify as a lawful compliance inspection because he acted on a local police department's request. The argument fails. Section 923 does not prohibit an ATF officer from conducting an inspection at the request of local law enforcement, **nor is there any reason to think that Congress intended to prevent ATF officers from carrying out compliance inspections when they have a particular reason to be concerned that violations might exist.**

*Id.* at 30 (emphasis added).

### C. Melton's interpretation would yield absurd results.

The Tenth Circuit, in *United States v. Marchant*, 55 F.3d 509 (10th Cir. 1995), considered an issue different from the one raised in this case. Nonetheless, in headnotes 8 and 9, the *Marchant* Court provided a helpful history of the Gun Control Act (GCA) and the Firearm Owners Protection Act (FOPA). In so doing, the *Marchant* Court described the legislative goals.

> Congress enacted the GCA because "it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." *Huddleston v. United States*, 415 U.S. 814, 824, 94 S.Ct. 1262, 1268, 39 L.Ed.2d 782 (1974). "The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.' " *Id.* (quoting S.Rep. No. 1501, 90th Cong., 2d Sess. 22 (1968)).

*Marchant*, 55 F.3d at 513. Judge Zwart further described the legislative intent as described by the Supreme Court in *Biswell*. Filing No. 62 at ECF pp. 7-8. "[I]f inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible." *Biswell*, 406 U.S. at 316.

6

The principal purpose of the statute remains keeping firearms out of the hands of prohibited persons. And the specific goal of the section at issue in this case is stated within the statute, "ensuring compliance with the record keeping requirements … ." § 923(g)(1)(B)(ii). Those goals are not advanced by prohibiting ATF from relying on the annual compliance inspection provision when ATF has reason to believe that a licensee is not complying. There is no "reason to think that Congress intended to prevent ATF officers from carrying out compliance inspections when they have a particular reason to be concerned that violations might exist." *Giragosian*, 614 F.3d at 30.

Melton's interpretation yields an additional absurd result. Melton's interpretation would mean that law-abiding licensees have a lesser expectation of privacy than those who are known to be violating the law. According to Melton's theory, one would gain greater legal protection because they are violating the law. This absurd implication shows that Melton's interpretation frustrates the plain meaning of the statute. The Supreme Court rejected an argument in *Burger*, albeit while considering a different statute, in part because it too would yield a similar absurd result.

> The purposes of maintaining junkyards in the hands of legitimate businesspersons and of tracing vehicles that pass through these businesses, however, also are served by having the officers examine the operator's inventory even when the operator, for whatever reason, fails to produce the police book. Forbidding inspecting officers to examine the inventory in this situation would permit an illegitimate vehicle dismantler to thwart the purposes of the administrative scheme and would have the absurd result of subjecting his counterpart who maintained records to a more extensive search.

*New York v. Burger*, 482 U.S. 691, 716, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987).

## Conclusion

The statute permits ATF to conduct an annual compliance inspection without obtaining a warrant, and those inspections have been upheld by the Supreme Court. Melton's primary

argument is that when ATF has reason to suspect that a licensee is not complying, ATF is prohibited from completing an annual compliance inspection.  Melton, however, reads that non-existent requirement into the statute.  There is no statutory support for his argument, nor can any support for it be found in the case law.  Melton's argument also runs contrary to the purpose of the statute.  The inspection completed by ATF in this case was lawful, and Melton's motion to suppress should be denied.

UNITED STATES OF AMERICA, Plaintiff

Respectfully submitted,

JOSEPH P. KELLY
United States Attorney
District of Nebraska

By:    *s/ Matthew R. Molsen*
      MATTHEW R. MOLSEN, #22693
      Assistant U.S. Attorney
      487 Federal Building
      100 Centennial Mall North
      Lincoln, NE  68508
      Tel:  (402) 437-5241
      Fax:  (402) 437-5390
      E-mail:  matthew.molsen@usdoj.gov